IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jonathan Corbett<br>*Plaintiff*<br><br>v.<br><br>Andrew M. Cuomo, *in his official capacity as Governor of the State of New York*,<br>*Defendant* | Case No. 20-CV-__4864__<br><br>***EX PARTE* MOTION FOR EMERGENCY[1] TEMPORARY RESTRAINING ORDER WITH INCORPORATED MEMORANDUM** |

### I.     Introduction

There is no doubt we are in the middle of a serious pandemic requiring a serious governmental response to protect the lives of the people.  It is for this reason that courts have largely allowed, and the people of New York largely tolerated, substantial curtailments on their freedom of movement by the State of New York and its municipalities.

This case asks the Court to consider an Executive Order that simply does not make sense.  In the context of trying to prevent an uninfected (or containably-infected) area from becoming infected, a quarantine order is reasonable.  In the context of trying to "flatten-the-curve" (that is, slow the progression of a virus through a community in order to prevent the overwhelming of medical resources), closure and stay-at-home orders are reasonable.

---

[1] This motion is submitted as an emergency motion because the Governor's order goes into effect within hours of this filing and Plaintiff's planned travel, which would subject him to the Governor's order, is scheduled in less than 48 hours.  Plaintiff therefore must have a decision immediately in order to decide whether he may attend to his business in other states or must cancel his plans to avoid being quarantined for 14 days.

Contemporaneous with the filing of this document, Plaintiff will seek to give notice to the opposing party in good faith by faxing, e-mailing, and overnighting the N.Y. Attorney General, who is tasked to respond to cases of this variety.

But that is not what this case challenges. This case challenges a quarantine order to protect a population that is *already broadly contaminated* from others who are *also already broadly contaminated*. Such an order stands to accomplish no public health benefit, and Plaintiff has been unable to find any court that has approved of such an order given this context. The challenged order places a serious restriction on a fundamental constitutional right – the right to travel –and in the face of other alternatives that would be cheaper, easier, less-invasive, and would better accomplish the state's objective.

Plaintiff asks the Court to, eventually, hold that the Governor's order is different from other, valid orders issued to mitigate the spread of coronavirus. But for today, Plaintiff asks the Court to find that there is a sufficient likelihood that he will be able to demonstrate the same to justify putting a temporary hold on the Governor's order.

## II.     Standard of Review

The legal standard governing a request for a temporary restraining order is the same as that governing a motion for a preliminary injunction. *See*, *e.g.*, *Geller v. de Blasio*, 20-CV-3566, 2020 WL 2520711, at *2 (S.D.N.Y., May 18th, 2020) (*citing Local 1814, Int'l Longshoreman's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n*, 965, F.2d 1224, 1228 (2nd Cir. 1992)), *appeal docketed*, No. 20-1592 (2nd Cir., May 19th, 2020). "Where, as here, a moving party seeks preliminary injunction to stay 'government action taken in the public interest pursuant to a statutory or regulatory scheme' that party must show irreparable harm in the absence of an injunction and a likelihood of success on the merits." *Latino Officers Assoc. v. City of New York*, 196 F.3d 448, 462 (2nd Cir. 1999) (*quoting New York Magazine v. Metropolitan Transp. Auth.*, 136 F.3d 123, 127 (2nd Cir. 1998) (*internal citation and quotation marks omitted*)). In general, violations of fundamental

constitutional rights causing more than mere economic injury automatically constitute irreparable harm.  <u>See</u>, e.g., *Bery v.City of New York*, 97 F.3d 689, 693 (2nd Cir. 1996), *cert denied*, 520 U.S. 1251 (1997).  Put simply, infringements on liberty cannot merely be repaid, and are thus irreparable.  In such an instance, "whether plaintiffs have satisfied the requirements for a preliminary injunction turns on whether they have shown a likelihood of success on the merits of their claim…" *Latino Law Officers Assoc*. at 462.

The question before the Court is whether the challenged order of the Governor has a "real or substantial relation" to his stated objective of protecting New Yorkers from infection by coronavirus.  "When the government acts in the face of such an epidemic, 'judicial scrutiny is reserved for a measure that `has no real or substantial relation to` the object of protecting `the public health...` or is `beyond all question, a plain, palpable invasion of rights secured by the fundamental law.`'  *Geller v. de Blasio*, No. 20CV3566 (DLC), 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020) (quoting *Jacobson* 197 U.S. at 31)." *McCarthy v. Cuomo*, 20-CV-2124 at *6 (E.D.N.Y., June 18th, 2020).

### III.  Statement of Facts

Context matters.  We should discuss it first.

When the Governor ordered all "non-essential businesses" to close on March 15th, 2020, the previous day saw 221 new infections and 4 new deaths related to coronavirus[2].  This was an

---

[2] All statistics for coronavirus infection within New York State cited in this document are available from the New York Department of Health or the office of Cuomo himself.  For ease of examining these numbers, the editors of Wikipedia have accumulated daily statistics released by the state into tables and graphs for easy viewing; the numbers appear to be faithful to the state's official count: https://en.wikipedia.org/wiki/COVID-19_pandemic_in_New_York_(state)#Timeline

alarming increase of 30.3% on the new infections and up from a single death the day before. Over the next 7 days, the total number of infections would jump from 950 to 20,875, and total deaths from 7 to 157. New York was still 3 weeks from its peak for daily coronavirus deaths, where on April 7th, 2020 there were over 10,000 new infections and 799 deaths in a single 24-hour period.

After April 7th, 2020, the number of daily coronavirus infections and deaths began to plummet. One month after the peak, daily infections dropped to 2,938 and deaths to 217. Two months after the peak, those numbers were 702 and 40. The most recent data available at the time of filing is June 23rd, 2020, which notes 581 new infections and 27 deaths (as noted in the complaint, a 7-day rolling average of 641 new daily infections). The trend is decidedly downward.

Two things are clear from this data. First, New York has seen a drastic reduction in coronavirus infections and deaths from its peak, successfully "flattening the curve." Second, New York still has plenty of coronavirus to go around. If we assume that coronavirus lasts for 2 weeks, then we can multiply the current daily infection rate – 641 – by 14 days, and come up with 8,596 individuals have an active *and diagnosed* coronavirus infection in this state. If we take into account undiagnosed individuals, the number must surely be in the tens of thousands of people in this state who have an active coronavirus infection.

IV. **Argument**

Had the Governor ordered the quarantine at issue in the beginning of March when only a handful of people were infected in the state, in hopes that the state could contain the existing infection and prevent its widespread introduction into the community, this case simply would not have been filed. In that context, a quarantine would make sense (whether or not some might say

it is heavy-handed).  But it is in the context of a state that clearly *does* have widespread dissemination of the virus in the community that the Governor has ordered a quarantine to protect the people of New York from that same virus.  Given that "the cat is already out of the bag," the Governor's order adds no protection to the people of New York.

The standard for whether the right to travel must yield to an order intended to protect public health is largely unchanged over the last century: there must be a "real or substantial relation" between the restriction and the public health benefit.  *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905).

What does this test mean in practice?  In *Jacobson* itself, the challenge was to mandatory smallpox vaccination, in which the Supreme Court held that no one could "confidently assert that the means prescribed by the State to that end has no real or substantial relation to the protection of the public health and the public safety" *Jacobson* at 31.  Since this case is not much of a "close call," it may not help us to draw the line here.

We can compare it to the more familiar means-end scrutiny tiers: "real or substantial" clearly means more than the "rational" in "rational basis," but how much more (and does it vary based on the right?).  In *S. Bay United Pentecostal Church v. Newsom*, No. 20-55533 (9th Cir., May 22nd, 2020), the California governor had argued that his coronavirus orders were lawful as long as they were in "good faith" and had "some factual basis."  The Ninth Circuit rejected that view.  *Id.* at *9 ("The State's motion cites no authority that can justify its extraordinary claim that the current emergency gives the Governor the power to restrict any and all constitutional rights, as long as he has acted in 'good faith' and has 'some factual basis' for his edicts," analyzing First Amendment question under normal First Amendment scrutiny).

If the Second Circuit were to adopt that approach, we would have to look to how the right to travel is typically analyzed. In this circuit, a travel restriction that is "substantial" is analyzed under strict scrutiny, while a "minor" restriction, such as a small toll, under a lesser standard. *Selevan v. New York Thruway Authority*, 584 F.3d 82, 102 (2nd Cir. 2009). Clearly, a 14-day quarantine under penalty of being held involuntarily at your own expense plus a $2,000 fine is a far more substantial restriction than the toll in question in *Selevan*. See also *Bayley's Campground Inc. v. Mills*, No. 2:20-CV-00176 at *17 (D. Me., May 29th, 2020) ("Curtailment of a United States citizen's right to travel and to enter and abide in the state of his or her choosing requires a compelling justification (i.e., not merely a rational justification)," citing *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 904 (1986)) (allowing coronavirus travel restriction only because the court was "not persuaded, at this date, that the measure is not the least burdensome way to serve a compelling governmental interest").

We can consider some other coronavirus case approaches. Two circuits have upheld temporary restrictions on abortion on the theory that they may take resources (PPE, hospital beds, doctors, *etc.*) away from the coronavirus fight – *after* taking in substantial evidence from the state demonstrating a basis for the restrictions. *In re Rutledge*, No. 20-1791 (8th Cir., Apr. 22nd, 2020); *In re Abbott*, No. 20-50296 (5th Cir., Apr. 20th, 2020). At least one circuit came to the opposite conclusion, again after considering a record of evidence supplied by the state in support of the alleged real or substantial relation. *Robinson v. Attorney Gen.*, No. 20-11401-B (11th Cir., Apr. 23rd, 2020).

Taking *Jacobson* in light of the 5th, 8th, 9th, and 11th Circuit cases discussed *supra*, what is clear is that although the courts may give some deference to the judgment of the state, the state is still required to provide *and show evidence of* a good reason to enact the restriction that it did.

Plaintiff submits that strict scrutiny is appropriate for the ultimate resolution of this case, but for the purposes of this motion and demonstrating a likelihood of success, even if a lower tier of scrutiny were appropriate, the state would still be required to provide evidence that quarantining incoming U.S. citizens from states with vaguely higher infection rates than New York will actually protect New Yorkers.

For the reasons already discussed, it seems quite unlikely the state can demonstrate that keeping people with a slightly increased likelihood of being infected with coronavirus *from an area that is already currently and actively abundant with infection* makes anyone safer.  The Governor's failure to explore obvious, less invasive, less expensive, and more effective alternatives – such as taking temperatures of travelers as they arrive, requiring travelers to get a coronavirus test at their own expense and, upon negative result, be freed from any quarantine requirements, *etc*. – lead a rational person to the conclusion that the public health justification is just pretext for motives that are other than good faith.

## V. **Conclusion**

The Governor is free to come before the Court at any time with evidence to show that the challenged order is actually necessary to protect the public health.  After all, the state should already be in possession of such evidence before issuing an order as drastic as the one challenged.  If and when such evidence is provided, the Court may immediately lift the TRO.  Until that time, the government should be ordered to "PAUSE" itself.

Dated: New York, NY

June 24th, 2020

Respectfully submitted,

_____/s/_____
Jonathan Corbett, Esq.
Plaintiff (attorney proceeding *pro se*)
CA Bar #325608
958 N. Western Ave. #765
Hollywood, CA 90029
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX:   (310) 684-3870