UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN CORBETT,

Plaintiff,

- against -

ANDREW M. CUOMO, in his official capacity as Governor
of the State of New York,

Defendant.

20-CV-04864 (LGS)(KNF)

**GOVERNOR ANDREW M. CUOMO'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

LETITIA JAMES
Attorney General of the
State of New York
*Attorney for Defendant Andrew M. Cuomo*
28 Liberty Street
New York, NY 1005
Tel: (212) 416-8733

MATTHEW J. LAWSON
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

ARGUMENT.......................................................................................................................3

I.     PLAINTIFF CANNOT ESTABLISH A CLEAR OR SUBSTANTIAL
       LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE
       EXECUTIVE ORDER IS CONSTITUTIONAL UNDER THE STANDARD
       APPLICABLE TO GOVERNMENT ACTION TO COMBAT EPIDEMICS..............4

II.    PLAINTIFF'S CLAIMS ARE ALSO UNLIKELY TO SUCCEED ON
       THE MERITS FOR ADDITIONAL, INDEPENDENT REASONS ...........................7

       A.     Plaintiffs Right to Travel Claim
              Is Unlikely to Succeed on the Merits ...................................................................8

       B.     Plaintiffs Fifth Amendment Right Against
              Self-Incrimination Claim Is Unlikely to Succeed on the Merits ..................................10

       C.     Plaintiff's Fourth Amendment Unlawful Seizure Claim
              Is Unlikely to Succeed on the Merits ...................................................................11

III.   PLAINTIFF FAILS TO SATISFY THE REMAINING
       REQUIREMENTS FOR INJUNCTIVE RELIEF ................................................13

       A.     Plaintiff has Not Demonstrated
              Irreparable Harm ...................................................................................................13

       B.     The Public Interest Weighs in Favor of New York's
              Mission to Protects Its Citizens from a Global Pandemic ..................................15

CONCLUSION...................................................................................................................16

i

## TABLE OF AUTHORITIES

**CASES**                                                                          **Page(s)**

*In re Abbott,*
  954 F.3d 772 (5th Cir. 2020)..................................................................................5

*Amandola v. Town of Babylon,*
  251 F.3d 339, 343 (2d Cir. 2001) .........................................................................14

*Antietam Battlefield KOA v. Hogan,*
  No. CV CCB-20-1130, 2020 WL 2556496, at *13 (D. Md. May 20, 2020) ......................................9

*Barrett v. Harwood,*
  967 F. Supp. 744, 746 (N.D.N.Y. 1997) ...............................................................15

*Bayley's Campground Inc. v. Mills,*
  No. 2:20-CV-00176, 2020 WL 2791797, (D. Me. May 29, 2020) ............................................10, 14

*Beal v. Stern,*
  184 F.3d 117, 123 (2d Cir. 1999) ...........................................................................4

*Bery v. City of New York,*
  97 F.3d 689, 693 (2d Cir. 1996) ...........................................................................14

*Bray v. Alexandria Women's Health Clinic,*
  506 U.S. 263, 277 (1993) ....................................................................................8

*Calvary Chapel of Bangor v. Mills,*
  No. 20-CV-00156, 2020 WL 2310913, at *7 (D. Me. May 9, 2020) ...................................7

*Cassell v. Snyders,*
  No. 20 C 50153, 2020 WL 2112374, at *6 (N.D. Ill. May 3, 2020) ...................................7

*Chavez v. Martinez,*
  538 U.S. 760 (1994) ....................................................................................10, 11

*Doe v. N.Y.U.,*
  666 F.2d 761, 773 (2d Cir. 1981) ...........................................................................4

*Edwards v. California,*
  314 U.S. 160, 168 (1941) ....................................................................................8

*Florida. v. Bostick,*
  501 U.S. 429, (1991) ......................................................................................11

*Geller v. de Blasio,*
  No. 20CV3566, 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020) ...................................5

*Higazy v. Templeton,*
  505 F.3d 161, 171 (2d Cir. 2007) .................................................................10

*Jacobson v. Massachusetts,*
  197 U.S. 11, 31(1905) .....................................................................4, 5, 6, 9

*Jones v. County of Suffolk,*
  936 F.3d 108, 114 (2d Cir. 2019) ...................................................................11

*Local 1814, Int'l Longshoreman's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n,*
  965 F.2d 1224, 1228 (2d Cir. 1992) ..................................................................3

*L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,*
  No. 18 Civ. 1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) ...........................4

*McCarthy v. Cuomo,*
  No. 20-CV-2124, 2020 WL 3286530, at *6 (E.D.N.Y. June 18, 2020) .............................4

*Missouri v. McNeely,*
  569 U.S. 141, 149 (2013) ...........................................................................12

*Mitchell v. Wisconsin,*
  139 S.Ct. 2525, 2534 (2019) ........................................................................12

*Nken v. Holder,*
  556 U.S. 418, 435 (2009)) ........................................................................4, 15

*People ex. rel. Schneiderman v. Actavis PLLC,*
  787 F.3d 638, 650 (2d Cir. 2015) ....................................................................4

*Rodriguez ex rel. Rodriguez v. DeBuono,*
  175 F.3d 227, 233–34 (2d Cir. 1999) ................................................................13

*Saenz v. Roe,*
  526 U.S. 489, 500 (1999) .........................................................................8, 9

*Six v. Newsom,*
  No. 820CV00877, 2020 WL 2896543, at *8 (C.D. Cal. May 22, 2020) .............................7

*Soos v. Cuomo,*
  No. 120-CV-65, 2020 WL 3488742 (N.D.N.Y. June 26, 2020) .....................................6

*South Bay United Pentecostal Church v. Newsom,*
  —— U.S. ——, 140 S.Ct. 1613, 2020 WL 2813056 (2020) ...................................5, 6, 12

*Toomer v. Witsell,*
  334 U.S. 385, 396 (1948) ...........................................................................8

*United States v. Holcombe,*
  883 F.3d 12, 17 (2d Cir. 2018) ................................................................................................ 9

*Ware v. Valley Stream High Sch. Dist.,*
  550 N.E.2d 420, 429 (N.Y. 1989) ......................................................................................... 9

*Winter v. Natural Res. Defense Council, Inc.,*
  555 U.S. 7, 24 (2008) ..................................................................................................... 3, 15

**CONSTITUTIONAL AMENDMENTS**

Fourth Amendment ........................................................................................................ passim

Fifth Amendment .......................................................................................................... passim

Governor Andrew M. Cuomo, sued here in his official capacity as Governor of the State of New York ("Governor Cuomo" or the "Governor"), respectfully submits this memorandum of law, together with the accompanying Declaration of Brad Hutton dated July 1, 2020, and the exhibits annexed thereto, in opposition to Plaintiff's motion for a temporary restraining order (ECF No. 2) ("Pl. TRO Mot.").

## PRELIMINARY STATEMENT

The Plaintiff, who wishes to travel to New York for certain undisclosed "business and personal" reasons, brings this action and the instant motion seeking to disrupt New York's response to the greatest public health crisis of the 21st Century.  In particular, Plaintiff seeks to enjoin the operation of the Governor's recent Executive Order 205 requiring certain persons entering New York to self-quarantine for a period of 14 days (the "Executive Order").  Plaintiff's motion should be denied because he cannot satisfy the high standards required of movants who seek the "extraordinary remedy" of a temporary restraining order.

Among other defects, Plaintiff fails to show that his claims, which allege a violation of various purported Constitutional rights, are likely to succeed on the merits.  (*See* Point I, *infra*.)  The self-quarantine requirement clearly furthers the state's pressing need to combat the spread COVID-19—and thus easily passes constitutional muster under the deferential standard that applies to state measures designed to address an ongoing pandemic.  This fact alone would be sufficient to defeat all of Plaintiff's claims.  But Plaintiff's claims also fail for other reasons, as detailed below.  *See* Point II, *infra*.

Plaintiff also fails to make an adequate showing of irreparable harm.  (*See* Point III(A), *infra*.)  In fact, Plaintiff's sole "showing" in this regard consists of a single conclusory allegation about supposed injuries to his "business and personal affairs" and to his ability to "service" legal clients. Plaintiff never bothers to explain what these purely speculative injuries are, or why they are so grave

that they require the disruption of New York's efforts to protect its citizens from a deadly pandemic that has already killed more than 24,000 New Yorkers.

Finally, the balance of equities and the public interest tip overwhelmingly in favor of New York's mission to protect its citizens from harm, rather than Plaintiff's desire to travel to New York without having to subject himself to the self-quarantine requirement.  (*See* Point III(B), *infra*.)

## STATEMENT OF FACTS

As the Court is well aware, the world is in the midst of a global pandemic that, to date, has killed more than a half a million people and has disrupted the lives of many millions more.[1]  New York recorded its first cases of COVID-19 on March 1, 2020, in New York City and on March 2, 2020, in Westchester County.  Hutton Decl. ¶ 3.  By March 7, 2020, 60 people had tested positive for COVID-19 in the State of New York, and the Governor declared a state of emergency.  *Id.* ¶ 4  As the death toll continued to rise, the State took additional measures to slow the spread of the coronavirus.  *Id.* ¶ 6 *et seq.*  For example, beginning on March 12, 2020, the Governor issued a series of executive orders that, among other things, restricted social gatherings and required the closure of "non-essential businesses" statewide.  *Id.* ¶¶ 16-17.

While these measures were successful in many respects, the pandemic is far from over, *Id.* ¶¶ 21-22, and certain other states have recently reported alarming increases in their rates of positive test results.  *See id.* ¶ 23 (noting that sixteen states that currently report a positivity rate of over 10%).  Thus, on June 24, 2020, the Governor issued Executive Order 205, the order that Plaintiff challenges here.  The Executive Order, among other things, directs the Commissioner of the Department of Health to issue a travel advisory that:

> All travelers entering New York from a state with a positive test rate higher than 10 per 100,000 residents, or higher than a 10% test positivity rate, over a seven-day rolling average, will be required to

---

[1]     *See, e.g., "Global coronavirus deaths top half a million,"* available at https://www.reuters.com/article/us-health-coronavirus-deaths/global-coronavirus-deaths-top-half-a-million-idUSKBN23Z0UQ (June 28, 2020).

> quarantine for a period of 14 days consistent with Department of
> Health regulations for quarantine.

Hutton Decl. ¶ 24 & Ex. W.  Under the travel advisory in question, 16 states currently meet the

requirement for required self-quarantine, including California, Florida, and Nevada.  *See*

https://coronavirus.health.ny.gov/covid-19-travel-advisory; Hutton Decl. ¶ 23 (listing all 16

impacted states).

On June 24, 2020, Plaintiff filed his initial complaint seeking to enjoin the operation of the

Executive Order. ECF 1.  Then, on June 30, 2020, Plaintiff filed his current pleading, the First

Amended Complaint.  The First Amended Complaint asserts that the Executive Order violates

Plaintiff's constitutional right to interstate travel under the Fifth Amendment (Count 1), his

constitutional right against self-incrimination under the Fifth Amendment (Count 2), and his

constitutional right to be free from unlawful "seizure" under the Fourth Amendment (Count 3).

First Am. Compl. (ECF 9) ¶¶ 68-83.  Plaintiff thus demands that the Court declare the Executive

Order unconstitutional and enter a permanent injunction.  *Id.* p. 8.

In the meantime, Plaintiff has filed the instant motion, which seeks a temporary restraining

order suspending enforcement of the Executive Order.  Plaintiff's motion should be denied.

## ARGUMENT

The standard for determining whether to grant a motion for a temporary restraining order is

identical to the standard for a preliminary injunction. *Local 1814, Int'l Longshoreman's Ass'n, AFL-CIO*

*v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992).  Such injunctive relief is "an extraordinary

remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

Plaintiff bears the burden of establishing 1) that he is likely to succeed on the merits, 2) that he is likely

to suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in his

favor, and 4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20.  The final two factors—

the balance of the equities and the public interest—"merge" when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18 Civ. 1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (*quoting Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit has "held the movant to a heightened standard" where, as here: (i) an injunction is "mandatory" (i.e., altering the status quo rather than maintaining it) or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *People ex. rel. Schneiderman v. Actavis PLLC*, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. *Id.* (*quoting Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. N.Y.U.*, 666 F.2d 761, 773 (2d Cir. 1981)).

Plaintiff cannot meet this heightened standard. He is cannot demonstrate a "clear" or "substantial" likelihood of success of the merits, he has <u>not</u> made an adequate showing of irreparable harm, and the relevant public interest and equitable considerations overwhelming weigh in favor of denying Plaintiff's motion.

## I.     PLAINTIFF CANNOT DEMONSTRATE A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE EXECUTIVE ORDER IS CONSTITUTIONAL UNDER THE STANDARD APPLICABLE TO GOVERNMENT ACTION TO COMBAT EPIDEMICS

The parties agree that the constitutionality of the Executive Order must be analyzed under the standard set forth in *Jacobson v. Massachusetts*, 197 U.S. 11, 31(1905). *See* Pl. TRO Mot. at Point II. As the Supreme Court recognized in *Jacobson*, a state must be given the latitude to enact measures to "protect [itself] against an epidemic of disease which threatens the safety of [its] members." 197 U.S. 11 at 25, 27. In light of these concerns, *Jacobson* elaborated a separate standard for evaluating constitutional challenges to state action designed combat an epidemic. Under this standard—which is far more deferential to the state than the principles that would control in

ordinary times—the state's action must be upheld <u>unless</u> the action "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 27, 31.

The *Jacobson* standard applies to all of the claims asserted in the First Amended Complaint. *In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020) ("*Jacobson* instructs that *all* constitutional rights may be reasonably restricted to combat a public health emergency") (emphasis in original).

Moreover, courts in this circuit and around the country have repeatedly declined to enjoin state action enacted to combat the COVID-19 pandemic, citing *Jacobson*.  *See McCarthy v. Cuomo*, No. 20-CV-2124, 2020 WL 3286530, at **3-6 (E.D.N.Y. June 18, 2020) (Ross, J.) (denying motion for preliminary injunctive relief in case challenging, *inter alia,* the Governor's executive orders restricting social gatherings, based in large part on *Jacobson*); *Geller v. de Blasio*, No. 20-CV-3566, 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020) (Cote, J.) (denying motion for TRO in case challenging executive order restricting non-essential gatherings, and holding that such challenges must be viewed through the "lens" of *Jacobson); In re Abbott*, 954 F.3d at 777 (applying *Jacobson* standard to executive order postponing non-essential medical procedures); *In re Rutledge*, 956 F.3d 1018, 1027–1032 (8th Cir. 2020) (applying *Jacobson* standard to directive requiring postponement of all elective and non-emergency surgical procedures).

Justice Roberts' recent concurrence *in South Bay United Pentecostal Church v Newsom*, —— U.S. ——, 140 S.Ct. 1613, 1614, 2020 WL 2813056 *1 (2020), while not constituting binding precedent, nonetheless adds another prestigious voice to the chorus of jurists who have recognized the continuing vitality of *Jacobson* and the legal principles for which it stands.  As *Justice Roberts* reasoned:

> The precise question of when restrictions on particular social activities should be lifted during the [COVID-19] pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U.S. 11, 38, 25 S.Ct. 358, 49

L.Ed. 643 (1905). When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United States*, 414 U.S. 417, 427, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people.

*Id.*; *but see Soos v. Cuomo*, No. 120-CV-65, 2020 WL 3488742, at **1-14 (N.D.N.Y. June 26, 2020) (acknowledging *Jacobson* and Judge Roberts' concurrence in *South Bay* but nonetheless granting preliminary injunction in an action alleging *inter alia,* that restrictions on social gatherings violated the plaintiffs' First Amendment freedom of exercise rights).

The Executive Order easily passes muster under the two-part *Jacobson* standard. First, there can be no doubt that the Executive Order bears a "real or substantial relation to" the objective of protecting the public from the scourge of COVID-19. It is universally understood—and Plaintiff appears to concede—that the virus spreads when individuals come into close proximity with one another. *See* First Am. Compl. ¶ 15 (asserting that the outbreak in New York City was unsurprising given the City's population density and the "close contact" in its public transportation system). Measures taken to limit the extent to which infected persons come into contact with others necessarily bear a real or substantial relation to protecting the public from the COVID-19 pandemic. Nor can there be any dispute that large numbers of people come into New York, including from areas with high rates of infection. The self-quarantine requirement ensures that those persons will not interact in the community until it can be demonstrated that they are likely free of the COVID-19 virus. The self-quarantine requirement also reduces the possibility that New York's health care system will once again become overburdened by a flood of new cases.

Further, it is clear that the Executive Order does <u>not</u> constitute a "plain, palpable invasion" of any constitutional right. As discussed below, the self-quarantine requirement does not implicate the right-to-travel—and it certainly does not constitute an obvious violation of that right. (*See* Point

II(A), *infra*.)  The Executive Order does not prohibit persons from traveling to or from New York. It simply requires that persons entering New York from an impacted state must self-quarantine for two weeks at a place of their own choosing.  And, as explained below, the Executive Order does not violate Plaintiff's rights with respect to self-incrimination or unlawful seizures.  (*See* Point III(B), (C) *infra*.)  Far from being a "plain" or "palpable" violation of the Constitution, the self-quarantine requirement is a sensible, common-sense measure intended to protect the public from a deadly virus and ensure the stability of New York's health care system.  Accordingly, Plaintiff's TRO motion should be denied.

## II.   PLAINTIFF'S CLAIMS ARE ALSO UNLIKELY TO SUCCEED ON THE MERITS FOR ADDITIONAL, INDEPENDENT REASONS

This motion—and indeed, Plaintiff's entire lawsuit—can be properly dispensed with based on the *Jacobson* factors alone.  As courts have recognized, while an epidemic is ongoing, the "traditional tiers of constitutional scrutiny do not apply" to a state's measures to combat that epidemic. *Calvary Chapel of Bangor v. Mills*, No. 20-CV-00156, 2020 WL 2310913, at *7 (D. Me. May 9, 2020) (quoting *Cassell v. Snyders*, No. 20 C 50153, 2020 WL 2112374, at *6 (N.D. Ill. May 3, 2020)); *see also Six v. Newsom*, No. 20-CV-00877, 2020 WL 2896543, at *8 (C.D. Cal. May 22, 2020) (denying motion for TRO seeking to enjoin statewide stay-at-home order and analyzing the likelihood of success on the merits based on the *Jacobson* factors alone, without any additional analysis of the traditional tiers of constitutional scrutiny).

Nonetheless, Plaintiff's putative claims also fail for independent reasons that do not depend on the deferential standard articulated in *Jacobson*, as explained in more detail below.

### A.  Plaintiff's Right to Travel Claim Is Unlikely to Succeed on the Merits

Plaintiff's right to travel claim fails on the merits because the Executive Order does not implicate the constitutional right to interstate travel.  As the Supreme Court reasoned in *Saenz v. Roe*, 526 U.S. 489, 500 (1999), the right to travel embraces three different components:

> It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Saenz*, 526 U.S. at 500; *accord United States v. Holcombe*, 883 F.3d 12, 17 (2d Cir. 2018).  None of these components is implicated by the self-quarantine requirement.

The first component protects "the right to go from one place to another, including the right to cross state borders while en route." *Id.* at 500.  For example, a California statute criminalizing the entry of indigent persons into the state violated the fundamental right to travel. *Edwards v. California*, 314 U.S. 160, 168 (1941).  On the other hand, a statute that conditioned welfare benefits on a full year of residency in California did not implicate the first component of the right to travel because the statute did not create a barrier or obstacle to entry into the state. *Saenz*, 526 U.S. at 501.  Here, the 14-day quarantine requirement imposes no barrier or obstacle to entry to or departure from the State.  Individuals traveling from impacted states are free to enter and leave New York; it is only <u>after</u> they are here that they must self-quarantine before further roaming within the state. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (explaining a purely intrastate restriction on movement does not implicate the right of interstate travel).

Nor are the second or third components of the right to travel implicated in this case. The second component, derived from the Privileges and Immunities Clause, bars "'discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Saenz*, 526 U.S. at 502 (quoting *Toomer v. Witsell*, 334 U.S.

385, 396 (1948)).  The self-quarantine requirement draws no distinction between New York residents and out-of-state residents; all individuals who travel to New York from an impacted state must comply with the quarantine requirements. The third component, which prevents states from denying a "newly arrived citizen . . . the same privileges and immunities enjoyed by other citizens of the same State," *Saenz,* 520 U.S. at 502, is also not infringed because Plaintiff does not allege an intent to change his residency.  And, again, the quarantine requirement does not distinguish between residents and non-residents—a New York resident who is returning home from an impacted state must self-quarantine to the same extent as a resident of another state.

Even if the Executive Order did implicate the right to travel, and even if that Order were somehow subject to strict scrutiny review—a result that would plainly be at odds with the reasoning in *Jacobson*—Plaintiff still could not prevail because the Executive Order is narrowly tailored to serve a compelling governmental interest.  *See United States v. Holcombe*, 883 F.3d 12, 18 n.8 (2d Cir. 2018) (finding that the challenged governmental registration requirements would be constitutional even if they implicated the right to travel because the "burdens imposed by the registration scheme narrowly serve the Government's compelling interest").

As a threshold matter, it is hard to imagine a more compelling governmental interest than New York's pressing need to protect its citizens from the further spread of COVID-19, and to ensure that New York's hospitals are not overwhelmed by new cases. *See Antietam Battlefield KOA v. Hogan,* No. CV CCB-20-1130, 2020 WL 2556496, at *13 (D. Md. May 20, 2020) ("slowing the spread of COVID-19 is a compelling government interest") (citation omitted); *Ware v. Valley Stream High Sch. Dist.,* 550 N.E.2d 420, 429 (N.Y. 1989) (controlling AIDS epidemic was compelling state interest).  Indeed, Plaintiff does not even attempt to claim that New York lacks a compelling governmental interest.

Instead, Plaintiff argues that the Executive Order is not drawn narrowly enough.  Plaintiff is mistaken.  For example, the Executive Order only applies to persons "entering New York from a state with a positive test rate higher than 10 per 100,000 residents."  Hutton Decl. ¶ 24.  Further, the order specifically limits the self-quarantine period to fourteen days—a duration that has been narrowly tailored to conform with the incubation period of COVID-19.  *Id.* ¶ 27.

*Bayley's Campground Inc. v. Mills,* No. 2:20-CV-00176, 2020 WL 2791797, (D. Me. May 29, 2020)*, appeal filed,* which Plaintiff cites, in fact supports the <u>Governor's</u> position because it demonstrates that New York's self-quarantine requirement is narrow enough to withstand scrutiny under the record present here.  *Bayley's*, like this case, involved a challenge to a statewide executive order requiring incoming travelers to self-quarantine for 14 days.  2020 WL 2791797 at *1.  However, the order challenged in *Bayley's* was significantly <u>broader</u> than the Executive Order challenged here because the quarantine requirement applied to "<u>any</u> person" entering Maine—and was not limited to travelers arriving from certain specified states.  *Id.*  Yet, after evaluating the plaintiffs' right to travel claim under the strict scrutiny standard, the court <u>still</u> found that the plaintiffs had not (or at least not yet) shown they were likely to succeed on the merits of that claim, *id.* at **9-11, and the court ultimately <u>denied</u> the plaintiffs' motion for a preliminary injunction.  *Id.* at *13.  Plaintiff's interstate travel claims in this action fare no better.

### B.  Plaintiff's Fifth Amendment Right Against Self-Incrimination Claim Is Unlikely to Succeed on the Merits

Plaintiff's claim that the Executive Order will somehow violate his Fifth Amendment right against self-incrimination is also meritless.  As the Supreme Court has emphasized, a violation of the constitutional right against self-incrimination "occurs only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez,* 538 U.S. 760, 770 (2003); *Higazy v. Templeton*, 505 F.3d 161, 171 (2d Cir. 2007).  Plaintiff has not established that he is likely to become a witness against himself in a criminal case.  Indeed, Plaintiff does not cite any provision from the Executive

Order, the traveler's form he attaches, *see* First Am. Compl. Ex. B, or <u>anywhere else</u> that even remotely suggests such a turn of events is likely to befall him. *See, e.g.,* Executive Order at p. 2 (contemplating a possible "civil penalty" for noncompliance). As such, the self-incrimination claim necessarily fails as a matter of law.

Plaintiff's alleged intent to exercise his purported "right to remain silent" by refusing to fill-to out the relevant form, *see* First Am. Compl. ¶ 82 & Ex. B, does not compel a different conclusion. The question presented here is not whether Plaintiff can invoke the <u>privilege</u> against self-incrimination (a point the Governor disputes), but whether Plaintiff has a viable <u>cause of action</u> against the Governor for a violation of his Fifth Amendment rights. As the Supreme Court recognized in *Chavez*, these are completely different questions. *See Chavez*, 538 U.S. at 770 ("Although our cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal cases . . . that does not alter our conclusion that a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."). The form that Plaintiff relies upon says nothing whatsoever about the possibility of arrest or criminal prosecution, *see* First Am. Compl. Ex. B, and Plaintiff certainly has not demonstrated that his anticipated refusal to answer the underlying questions is likely—let alone "clearly" or "substantially" likely—to result in his being compelled to be a witness against himself in a criminal proceeding.

### C. Plaintiff's Fourth Amendment Seizure Claim is Unlikely to Succeed on the Merits

Plaintiff also asserts the self-quarantine order will result in a "seizure" of his person under the Fourth Amendment. Plaintiff is wrong. As the Supreme Court reasoned in *Florida. v. Bostick*, 501 U.S. 429, 434 (1991), "[o]nly when the [law enforcement] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a

'seizure' has occurred."  As discussed above, Plaintiff has <u>not</u> established that he is likely to be arrested or criminally prosecuted.  Thus, any claim that Plaintiff is likely to be seized by "physical force" necessarily fails.

Nor can Plaintiff establish the likelihood of a Fourth Amendment seizure by pointing to any alleged "restraints" on his liberty that he might face during self-quarantine.  Indeed, Plaintiff cites no case that even remotely suggests that this type of alleged restraint rises to the level of a "seizure" under the Fourth Amendment.  If Plaintiff's "logic" were accepted, then <u>every</u> quarantine would necessarily constitute a mass Fourth-Amendment "seizure," a conclusion at odds with over a hundred years of federal jurisprudence.  *See Jacobson*, 197 U.S. at 25 (observing that the Supreme Court has "distinctly recognized the authority of a state to enact quarantine laws and 'health laws of every description'")

Moreover, even analyzed under the standard applicable to actual Fourth Amendment seizure claims, the Executive Order is constitutional nonetheless.  The Fourth Amendment "does not proscribe all searches and seizures, but only those that are unreasonable."  *Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019).  Here, the decision to require persons entering New York from an impacted state to quarantine themselves for two weeks was a manifestly reasonable one, necessary to protect the public from a disease that, at its height, was killing approximately 800 New Yorkers every single day.  *Cf. South Bay*, 2020 WL 2813056 at *1 (Roberts, C.J., concurring) (emphasizing that when state officials "undertake to act in areas fraught with scientific uncertainties, their latitude must be especially broad." (quotation omitted)).

The Executive Order is also reasonable under the exigent circumstances exception to the Fourth Amendment's warrant requirement, which applies "when there is compelling need for official action and no time to secure a warrant."  *Mitchell v. Wisconsin*, 139 S.Ct. 2525, 2534 (2019) (quoting *Missouri v. McNeely*, 569 U.S. 141, 149 (2013)).  The need for action to fight the spread of

COVID-19 could not be any more compelling, and the prospect of filing for and obtaining individualized warrants for each and every traveler attempting to enter New York from an impacted state would be absurd in the best of times—and even move so in the middle of a global pandemic. Accordingly, even if the Executive Order did implicate the Fourth Amendment – which it does not – it would comfortably pass constitutional scrutiny.

## III.   PLAINTIFF FAILS TO SATISFY THE REMAINING REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF

Quite apart from plaintiff's failure to show a likelihood of success on his claims, there are additional, independent reasons that require the denial of the instant motion; in particular, Plaintiff has failed to demonstrate irreparable harm, and both the relevant considerations with respect to public interest and the balance of the equities favor the denial of injunctive relief.

### A.  Plaintiff Has Not Demonstrated Irreparable Harm

It is black letter law that "[i]n the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir.1999) (internal quotation marks and citation omitted). Moreover, the Second Circuit has emphasized that irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Id.*

Plaintiff has utterly failed to demonstrate that he stands to suffer irreparable harm—indeed, he barely even attempts to make such a showing. Instead, Plaintiff merely offers the conclusory and wholly unsupported allegation that he faces "substantial injury" to his "personal and business affairs, including loss of business and limiting his ability to service his law clients." First Am. Compl. ¶ 66. This is entirely insufficient. *See Rodriguez*, 175 F.3d at 234 (to show irreparable harm, "the movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damage").

13

Far from constituting irreparable harm, the supposed limitation on Plaintiff's ability to conduct in-person professional interactions is no greater than that endured by countless New York lawyers and other professionals over the course of the COVID-19 pandemic.  Many such professionals have been working from home since late March, with little or no ability to meet in-person with clients or professional colleagues.  Yet, these New Yorkers have quickly adapted to the use of alternative communication strategies, such as videoconferencing, telephone calls, and email.  Plaintiff does not identify any reasons why he cannot do the same.

Instead of undertaking any serious effort to show irreparable harm, Plaintiff simply declares any such exercise to be unnecessary.  In particular, Plaintiff asserts that "violations of fundamental constitutional rights causing more than mere economic injury automatically constitute irreparable harm." Pl. TRO Mot. at Point II (citing *Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir. 1996).  Once again, Plaintiff is mistaken.  *Bery*, upon which Plaintiff relies, was a First Amendment case, and the reasoning in that case should not be extended beyond that narrow context.  *See Bery,* 97 F.3d at 693 (stating that "Violations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction.") (emphasis added).[2]  Indeed:

> while some constitutional deprivations amount to *per se* irreparable harm . . . the cases where courts have held that a constitutional deprivation amounts to an irreparable harm are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy, or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief.

---

[2]     And while a *Wright and Miller* article quoted in *Bery* appears to extend this reasoning to other constitutional claims, *see id.,* it is not at all clear that the *Bery* court intended to endorse such an extension.  In any event, even *Bery's* pronouncements with respect to First Amendment claims are now subject to doubt.  *See Amandola v. Town of Babylon*, 251 F.3d 339, 343 (2d Cir. 2001) (acknowledging that "this Court has not spoken with a single voice on the issue of whether irreparable harm may be presumed" in a First Amendment case).

*Barrett v. Harwood*, 967 F. Supp. 744, 746 (N.D.N.Y. 1997), *aff'd*, 189 F.3d 297 (2d Cir. 1999) (citation and internal quotation marks omitted).  Plaintiff has pleaded no facts, and submitted no evidence, that even remotely suggests that he stands to suffer a "deprivation . . . of such qualitative importance as to be irremediable by any subsequent relief."  *Id.*  If anything, Plaintiff's vague references to the "loss of business" and the servicing of the clients, First Am. Compl. ¶ 66, suggest the <u>exact opposite</u>: an alleged "injury" that is fully capable of being redressed by an award of monetary damages.

Because Plaintiff has failed to demonstrate that he stands to suffer irreparable harm, his motion for preliminary injunctive relief should be denied.  *See Bayley's*, 2020 WL 2791797 at *13 (confirming that the plaintiffs were required to demonstrate irreparable harm as part of their constitutional challenge to Maine's 14-day self-quarantine requirement and concluding that they had failed to do satisfy this requirement).

### B.  The Public Interest Weighs In Favor Of New York's Mission To Protect Its Citizens From a Global Pandemic

The balance of the equities and public interest prongs of the preliminary injunction standard, which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), also require the denial of Plaintiff's motion.  The State's interest in protecting its citizens against a deadly coronavirus pandemic is overwhelming, and it vastly outweighs the purported harms that Plaintiff claims he will suffer.  *See Bayley's,* 2020 WL 2791797, at *13 (finding that the public interest at issue in the challenge to Maine's 14-day self-quarantine requirement was "enormous" and outweighed the plaintiffs' showing as to their own harm).

Indeed, the public interest and equitable considerations at issue are sufficient to require the denial of Plaintiff's motion <u>standing alone</u>.  *See Winter*, 55 U.S. at 23-24 (declining to undertake a

separate analysis of likelihood of success on the merits because "proper consideration" of public interest and equitable factor "alone require[d] denial of the requested injunctive relief").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order should be denied.

Dated:  New York, New York
       July 1, 2020

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant Andrew M. Cuomo*

By:

*/s/* Matthew J. Lawson
MATTHEW J. LAWSON
Assistant Attorney General
28 Liberty Street
New York, NY 1005
Tel: (212) 416-8733
matthew.lawson@ag.ny.gov
